If it please the Court, my name is John Dozier and I represent Getloaded.com in this case. I'd like to reserve five minutes. I'll monitor, of course, myself. Internet truck stop and Getloaded are internet companies and do all their business online. They put together shippers who have to move freight with truckers. Truckers and shippers come to the site and match up and do business with each other. The primary issue that I'd like to address first is one of first impression in the Ninth Circuit. And it deals with the calculation of damages under the Computer Fraud and Abuse Act, Section 1030 U.S.C. There are three elements. Of course, that's a criminal statute. It started out as a criminal statute in 84. And about 90 or 86 and then 94 they implemented a civil cause of action. Several restrictions, however, apply in order for you to assert basis for relief under the civil aspect of the statute. One is Congress put in a $5,000 minimum damage requirement. Which subsection are we talking about now? Excuse me, Your Honor. The $5,000 subrequirement is under Section 1030E-8, which is the definition of damage under the CFAA that applied at the time. No, I don't think you're right. Eight doesn't have the $5,000. Eight says the term damage means any impairment to the integrity or ability of data, a program, a system, or information. Well, there are two versions of the statute that are... It goes on to say that it causes law segregating of its $5,000 in 8A. Yes, the old statute. Well, the threshold issue here is which version of the statute applies. Now, under the what you're reading is the latest version, which is the Patriot Act, where they took the $5,000 and moved it up. Don't we have some authority that already tells us to apply that in several cases, the current version? The authority to apply the newest version as it relates to the Patriot Act? I haven't seen any. And, of course, the application of the Act, the old version, and the application of the new version, we don't think makes any difference anyway, because all the new version did. That would be my question. I mean, it's the same thing. What difference does it make? I don't think it makes any difference because, you know, in the new version, what the legislature did was basically said the courts have got it right on the damages, what is the type of damages you can recover on the one Act requirement, et cetera, and we agree with the courts, and they put it into the statute. In fact, if you look at it, it's an easier, much easier issue, even though, think about it, leading up to the Patriot Act, every court, we had four courts that had addressed this issue at the district level, everyone had found that a single Act, the damages had to flow from a single Act. Okay. Let me ask you about the single Act. We have some district court opinions, but doesn't the single Act requirement contradict the language of the statute itself, which allows the victims to aggregate the losses? Oh, but aggregation, as the courts have found, relates to the ability to aggregate over multiple computers and aggregate damages over time. In fact, the legislative intent was right on point. When we went back and looked at, and the courts in both AOL and DoubleClick, which were rather extensive analysis of this issue, they went back and looked at what was said, of course. You're talking about these district court cases. Yes, district court. And so the answer to your question is this. There is a statement from the legislative intent right on point there. I had the same problem that Judge Nelson did. It looked to me, when I read the statute, as though it spoke of aggregation and very clearly meant that you could add up and not just use a single Act. And then I read the district court cases. They rely on legislative history. As is often the case, the legislative history is more ambiguous than the statute. That's exactly right. You're not supposed to use the statute only to resolve ambiguities in the legislative history. You're supposed to not even look at the legislative history if the statute is clear. And let me go back to law school. Looking at the purpose of this statute wasn't, unless we read the aggregate, can't sophisticated hackers go in $4,999 a million different times, under your theory? Oh, well, the answer to this is that, yes, if you don't achieve the $5,000 threshold, which, of course, a hacker wouldn't have control over that. I mean, that's something that's a function of the party who's been hacked. But, yes, there are circumstances under which this statute would not apply. And then you know what you'd have to do? You'd have to bring it in state court under trespass to chattels or violations of the state computer statutes or other plethora of causes of action. I mean, it doesn't mean that all because you have a hacker who comes into a site that we're going to find federal jurisdiction. That's the whole point. And when Senator Tribble, who was a sponsor of this legislation on the Senate floor, was arguing or explaining the reason for the act, he said, narrow interpretation, we want our federal courts to interpret this very narrowly. We don't want – this doesn't intend to be for every act. It's intended to be for the major acts. Now, a major act that's – that has major damage because it takes case – takes – occurs in a series of discrete acts, even though the aggregate is massive, you're saying, well, it has to be the one act. That's what Congress logically had in mind? Oh, not only that. Yes, Your Honor. And, you know, look at the Patriot Act. Congress never said one act. That's all inferred from impairment being in the singular. Is that correct? That was the original basis for it. But if you look at the most recent Patriot Act, it's obvious. Congress has now effectively put it in writing. Let's look at the provision. It carves out an exception to the single act theory for criminal cases. So it says – now the statute reads – What are you looking at now? It's section 1030A5 – I'm sorry. Yeah, A5B1. That's now the only statute that – you must prove those elements to recover now under the CFAA. I don't see where that does the job for you. It allows aggregation and related course of conduct. Well, let's read it because it says, for loss to one or more persons during any one year period, then it carves out an exception to the prior act rule and it says – or the single act rule. It says, and for purposes of an investigation, prosecution, or other proceeding brought by the U.S. only, loss resulting from a related course of conduct. So what it's done is it said, yeah, we agree with the court decisions on the one act. But, you know, in order to – I don't see that. I'm just missing your reading. It says you can only – only on cases brought by the United States can you calculate losses resulting from a related course of conduct. It's in the parentheticals in that paragraph. I had thought what it was doing was narrowing things for the United States so that that qualification didn't apply to private plaintiffs. It's – I view it as recognizing that courts had found that there was one act requirement here and that they broadened the application of the act for purposes of calculating the $5,000 threshold in criminal and obviously some type of significant civil cases with the U.S. as a party. So what they've said there is there is a prior act. We see it. You know, we agree with the courts. And now we're going to carve out an exception under the Patriot Act. We want to be able to go after these criminals without having to prove one act. And that's totally consistent with the line of cases that have been decided. And another interesting issue is – No circuit court authority going your way. Is that correct? No, there's never been a circuit decision on it. Yours would be the first. And there are four district court decisions. And looking at those decisions, obviously they're district courts, but DoubleClick is the big Internet marketing company in the world and AOL, obviously we know about AOL. Those were very detailed decisions, very detailed analyses, one from New York, one from Florida. I'm not sure I get your point. What does this mean? 1038 by B1. Statute of the law, civil claims to recover loss, quotes, do one or more persons during any one-year period, dot, dot, dot, aggregating at least $5,000 in value. This was a question that the five-year-old had, and I didn't understand your answer to that. The explanation is this. You can aggregate damages on the CFA for accesses to multiple computers and for damages incurred by multiple people, okay, if the end result is damages. So, like, let's say that in some of these cases in which you have a program that goes out and affects, you know, 5,000 people at the same time, and each one has $5 in damage, you can aggregate those damages. And that's fairly clear under the amendments also. Well, there's a legislative history that said CFAA broad purpose was addressing in a single statute the problem of computer crime. The single act requirement seems to eviscerate that purpose. Well, what they said was, I think it's in the context of the entire legislative intent. Let's listen to this. This is also from the Judiciary Committee report. The committee intends to make clear that losses caused by the same act may be aggregated for purposes of meeting the $1,000 threshold. You know, I just am not inclined to pay the slightest attention to the legislative history that you're citing, so I really need some help with statutory language. I've got this language that you and Judge Nelson were just discussing, and I can't see anything in that to support a single act interpretation. Where else are you getting it from? I'm sorry. Are you looking at Section 1030A? A1B5. A5B1. And you've said that the parenthetical is a specific legislative exception to the single act rule. Exactly. And is that so stated in any legislative history in precise terms? That's your inference. Yes, that's my inference. Okay. And that's my conclusion, and there is not stated here. It's from the language. There's virtually no legislative history to support that. Okay. So if we look at this, as Judge Kleinfeld is saying, we have to look first to the language of this clause that you've read, and if we want help construing the intent or scope of the parenthetical, you're telling us there's no specific legislative history that explains. We're aware of these district court cases, and therefore we're going to create an exception for the government. That's exactly right. I looked through the entire comments on Patriot Act. You can imagine they weren't they're on a committee. Very few committee reports. They enacted the Patriot Act in a month, I think. That's another subject. Sometimes you read legislative history like the advisory committee notes to the Federal Rules of Civil Procedure where they actually are trying to set out what they were doing, but most of the time you read it out and it's more or less sales talk where it's focused on a different issue from what's before the court. Right. I agree. I used to be a lobbyist up there. I know how those things work, so I agree. You probably wrote a lot of legislative history. I know how to lobby legislative intent. Sometimes they'll say, well, we're not sure whether there really is legislative intent on some of these bills. Anyway, the interesting thing is this wasn't the only change that was made in the Patriot Act. They tracked some other decisions. I mean, your Middleton decision ended up being what appears to be the basis for a modification on the scope of damages. And that leads us to the next issue, which is can you get goodwill, et cetera. Under this Act, you can't. I mean, it's pretty black and white. What they do is they took the language in Middleton and apparently let me read this to you, though. Under loss now under this statute, if we're applying it, of course, it means any reason. What's this say? Yes, I'm referring, by the way, to E11. That's the definition section for loss. It says the term loss means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damages assessment, and restoring the data, program, system, or information to its condition prior to the offense. Now, that's what applies in this case. It goes on to say that for service interruptions, i.e., you have an attack on some website and people can't use the service or you have an attack on an ISP, then you can get revenue loss, cost incurred, or other consequential damages, but only in that case. That's exactly what we have here. And this is totally consistent with the Middleton case. On your loss issue, it looked to me as though you weren't saying that the judge did not instruct the jury properly. What you were saying was that the theory used by the plaintiff's expert was not valid, and you assumed that the jury bought that expert's theory. It strikes me that that's not a valid way to argue the issue. You have to assume that the jury follows the instructions, and one of the instructions is to evaluate expert testimony and make their own judgment on it. Well, it's certainly a sufficiency of the evidence argument, which is that the jury must have speculated in order to come to the conclusion that they did. Now, the argument is made that jury instructions … Why would they have to speculate? Why couldn't they just deconstruct the expert's analysis in the jury room and then put it back together in a way that suited them under the instructions? Because the only testimony on the ability to do that was from their expert, and he said you can't do it. But they don't have to follow the expert. They can pick any, all, or none, or some of what the expert says. Use it as they wish. Well, there has to be adequate evidence, of course. And we have … They could have concluded since you can't deconstruct it because it's overlapping, presumably. They can say because you can't deconstruct it and the defense has provided no basis on which to go otherwise, we'll go with the best we've got. And, in fact, they bought some of the notion and said we'll scale it down. So what's wrong with that? Well, it's because the only testimony as to damages that … First of all, the royalties, implied royalties are not recoverable under the CFAA. That was my point when I read this section. It's pretty black and white. The only damages that are recoverable under the CFAA are, again, damage assessment, restoring the data program system or information that's prior condition, or responding to an offense. Black and white, you can't get royalty damages. Now, assuming for the sake of discussion that we want to get to the issue which you've raised, which is isn't there a sufficiency of … Isn't the expert testimony adequate for the jury to have drawn its conclusions? Let's keep in mind that the expert said, I'm assuming we stole their website. We copied everything. Let me give you a simple PI analogy that illustrates what's going on in my head so that you can educate me. Expert witness tells the jury the plaintiff's damages are thus and such for mental distress. This man's had a million dollars' worth of mental distress. Because of the nature of the particular tort, the judge tells the jury, you cannot award any damages for mental distress. The jury awards a million dollars in damages. You're telling me to assume that the jury awarded mental distress damages, but I have to assume the opposite, that it didn't, because we're supposed to assume the jury followed the instructions. That's where I'm hanging up on your argument. Well, the – and I understand. I mean, it's – I actually used the same analogy when I was trying to think through this. But, of course, the law of the case isn't the instructions. The law of the case – the law that should have been applied, of course, is the law that applies to the case. And, yes, we should have objected to instructions. We did voice our concerns, obviously, throughout the case vociferously on this whole damages theory. But – and we followed the court's direction as to when we should be objecting, et cetera. But I think the point also is this. If in a personal injury case it turns out that those damages are not recoverable, no matter what number it is, no matter how they're sliced and diced, they're not recoverable, then the jury isn't entitled to award the damages. Okay. So just so I understand that, what you're saying is they got a package of information with an instruction that says you can deconstruct, and your point was embedded in that package without any guidance for the jury to accurately extract out implied royalties. Therefore, the verdict is inherently fatal. Yes. The basis for their recovery is not permitted by the statute under the CFAA. But I have to indulge every presumption in favor of the verdict, don't I? Right. But when it's in black and white, I'd suggest, Your Honor, when it is in black and white and says you can't do this, you can't recover royalty damages, I don't think you can. I do note that I have a minute and a half left. Can I reserve that for rebuttal? Sure. Thank you. Thank you, counsel. May it please the Court, my name is Steve Anderson, and I am representing Internet Truck Stop. Counsel, members of the Court, in this appeal, the appellant effectively concedes that for over two years, it systematically and repeatedly invaded its main competitor's system through all manner of trade secret fraud, hacks, and impersonations. Well, I think he was pretty darn candid in saying he's got a bad guy for a client. So accepting that and focusing on the legal aspects that they're raising, which the district court wasn't inclined for perhaps understandable reasons to credit, How do you read the provision in the statute that he's construed as accepting the single transaction rule or single act rule only for the government? What's your reading of that clause? So when we sit down to look at the statute, we have your best reading of it. Yes, Your Honor. The provision which he is talking about is provision 5B1, or small 1, which has within it a parenthetical that says, For purposes of investigation, prosecution, or other proceedings brought by the United States only, loss resulting from a related course of conduct. That's the parenthetical Your Honor is referring to. Affecting one or more protected computers. Yes, Your Honor. I think that that parenthetical has to be read in the context of the entire statute. And that parenthetical, to me, is exactly as Judge Kleinfeld has indicated, does not at all prescribe a related course of conduct type of analysis only with respect to the government, and in every other case it doesn't apply. The only thing that parenthetical refers to is prosecutions brought by the U.S. government, and related course of conduct being really a concept that comes out of criminal sentencing guidelines. The entire statute, if you read it together, that is the post-Patriot Act amendment, the October 2001 amendment, when defining loss in paragraph 11 states that loss means any reasonable loss to any victim. And then when it talks about the threshold, talks about loss, dot, dot, dot, aggregating to at least $5,000 in value. Your Honor, I just do not believe there is any other reasonable plain-meaning reading of the statute other than to say that any means any, and any person means any person. And if it can be aggregated over one year period of time, that means any loss to any person can be aggregated over a one-year period of time to reach that $5,000 threshold. Let's see. What should we do with the parenthetical again? The parenthetical is a throw-out parenthetical, Your Honor, simply for purposes of talking about applicants or, I'm sorry, proceedings brought by the U.S. government. It has no application to this case where it's a civil litigation between two private parties. True. But what does it do for prosecutions and civil proceedings by the government? I'll speculate, Your Honor. I don't really know. I'm not a criminal lawyer. But what I understand it to mean, because this CFAA is both a civil remedy and a criminal statute, it relates to instances where the government prosecutes someone for criminal fraud, and they can make use of a related course of conduct in order to make their prosecution case. That's how it reads to me. Any case, district appeals anywhere that has adopted your theory? We have lots of district court cases that have not adopted your theory. Do you have any court anywhere that has adopted your theory? Yes. Well, there are no cases in the – if I may just take issue a little bit with Judge Nelson with your statement. There are no cases, in my opinion, that adopt a single-act theory at all. The only cases that talk about that are district court cases where they're in the context of a class action certification, and the attempt is to aggregate the damages for purposes of meeting class certification requirements. There are absolutely no cases that say outright that in a litigation between two private parties, and this is a key point, Your Honor, there are no cases that say that where there are multiple hacks or multiple invasions against a single victim, that that single victim may not aggregate over a one-year period of time the losses that result from those multiple hacks. The case that comes closest to making that point very well, I think, is the AOL 5.1 conversion case, which talks about the absurdity, which I believe was Your Honor's point earlier, of saying that if one person hacks one time and creates $5,000 in damage, that is a violation of CFAA. However, if one person hacks hundreds of times or thousands of times, and each one of those doesn't come up to $5,000, but in the aggregate it exceeds $5,000, somehow there is not a violation of the CFAA. That is absurd. And the district court in Florida that addressed that type of question in 5.1 said that can't possibly be congressional intent because that would vitiate the statute. It would mean that in the world of trafficking in passwords and hacking into computer systems, you can only find a civil remedy against that one odd person that hacks you only one time. And in this case, Your Honor, we had two-plus years of hacking, impersonations, trafficking in passwords, and using illicit means to get into our client's computer in order to obtain all manner of different types of trade secret protected information and functionality. Now, under those circumstances where it is undisputed in the record that our client adopted reasonable remedial measures which exceeded $5,000 to address hacks and losses which had in a one-year period of time, over $40,000, the $5,000 threshold is clearly met. Well, assuming that we agree with you on speaking on the assumption, I want to get to something that was not mentioned by the appellant, and that is the breadth of the injunction. Now, you suggest that the injunction prohibiting get loaded from accessing the IT website is actually limited to unauthorized access. But that's not what the injunction reads, as I read it, and maybe you can help me. Don't we need to remand, assuming we agree with everything else, to narrow the injunction to prevent get loaded from only accessing the password-protected portions of the site? Your Honor, that is, in my reading of the preliminary injunction, Your Honor, which is the permanent injunction, what Judge Windmill did is he said, I don't need to restate everything that was in the preliminary injunction which was extended by stipulation. And if the Court reads the preliminary injunction paragraphs that deal with that section, it is specific with respect to only outline unauthorized accesses. Now, I will tell the Court that there is some problem with permitting this particular defendant the right to even access a homepage because of their ability to do certain things once they get on the site, without going into all the evidence that the Court heard about how it is that you can get onto the homepage, disguise your access by going beyond that, looking into code and going into functionality, and then simply saying all I did was access the homepage. What the judge did was he said, look, for purposes of removing any taint between these two companies who are direct competitors, my injunction states you will not access this page, period. You're saying that it's legitimate, as is, even if everybody else in the world can go to the public homepage, because for this defendant, you need a broad prophylactic. Absolutely, Your Honor. In a way, in a criminal case. Absolutely. The condition of probation restricts what is everybody else's right sometimes. That is absolutely true, Your Honor. My point with Judge Nelson was that I believe the intent of Judge Windmill's injunction was to prevent the type of unauthorized access that has been the focus of the litigation. However, the way in which that occurs, occurs with clever computer hackers in a multitude of ways, and Judge Windmill had all that in front of him over a two-week jury trial and preliminary injunction proceedings, and he fashioned an injunction which would permit my client to function fairly in the marketplace. And he restricted all access. Yes. Okay. Did you also address what's the time limit on this injunction? Is there no terminal point? There's no terminal point in the injunction, Your Honor. And what's the authority for having an open-ended injunction like that? Well, Your Honor, it really wasn't an issue that was raised, but I don't believe that there is any authority. To answer your question, I'm not aware of any authority either way. Generally, there is, at least in trade secret cases, if the competitor steals and gets a competitive advantage, usually there's a terminal point that says, I calculate based on how long it will take to they would have had to take if they start from scratch and do it legitimately, so that there's an end game on it. There's no analogous situation here? No. I do not believe there is, Your Honor, and if I can explain. Sure, please. This was a the way in which these accesses occurred can rear its ugly head again at any time in the future. And the reason is because as the wrongdoer in this case becomes more and more sophisticated in the way in which they try to access Mike, and this is all just an information business. I mean, if you can have access to the information now or five years from now or ten years from now, it's just as valuable as it was when they started. And so what the judge fashioned, Your Honor, is just simply a very simple, easy-to-follow injunction, which just says do not access this site and also do not copy source code and do not take trade secrets, which would have been prohibited by the law anyway. But in terms of its ability to have any terminal point, what the judge specifically said in his decision on the JMOL motion was that he wanted this injunction in place permanently because he anticipated in his decision, if you'll read Judge Windmill's decision, he anticipated the possibility of future litigation against these parties, and he wanted something so that our client could continually monitor and re-sue in the event that there were further accesses. That was his clear intention, and that, I believe, is the reason why the injunction is open-ended, Your Honor. Can you, if we're okay on injunctions, could you then turn to the damage aspect? How do we find a way to support a jury that a verdict that may have improperly awarded damages for an implied royalty? Your Honor, first of all, I would rely primarily upon instruction number 31. This was an instruction to which there is no objection at trial, and Mr. Dozier concedes that in his argument here today. But I want to take it a step further, if I might, and also point out to the Court that this subject of whether or not you could get royalties, an implied royalty, was never raised at all below, either at trial, jury conference, JMOL, or directed verdict, none of them. It was simply not raised. And, Your Honor, if I'm understanding the question, I'm not sure whether the ---- I'm not sure whether the question goes to whether the apportionment question or the entitlement to royalties. Well, as I understand the theory, you put on an expert who said, these are the various elements that comprise my damage calculation, and some of the ---- I mean, they weren't   question or the entitlement to royalties. The Court awarded ---- there was no liability for copyright infringement and the like. So there may have been ---- I'm not exactly sure, because I haven't looked at it for a while, the complete theory, but the concept is that there were embedded in his numbers bases for damages, some of which may have been improper. And you're saying, well, okay, if that's the case, if the jury doesn't find the factual predicate for this component of damages, then it shouldn't award damages. There's no liability, no damage. They're arguing, well, embedded in here, he's cast it in terms of an implied royalty under the statute, saying, you know, there's no basis. The expert said, I can't disaggregate. So how can you expect the jury to do it? Okay. The aggregation issue, Your Honor, is a very ---- it's academic only. It had no basis at all in terms of the case. And the reason I say that is because there is no statement, either in the briefing, at trial, or before this Court, that there was any duplication of damages. And if there was no duplication of damages, Your Honor, how could the way in which it was apportioned between various subsections of the Computer Fraud and Abuse Act make any difference whatsoever? The 450 almost thousand dollars of royalty damages which were awarded were, it is true, awarded under three different sections, 2, 4, and 6 of the Computer Fraud and Abuse Act. That is true. And the jury came up with a number by, I will say, rejecting part of my damage expert's testimony and, I think the Court said, deconstructing it or recalculating it based upon a number of different factors which they had in front of them. Here were some of the factors. One, the judge specifically told them, if you don't like some of what the witness testified to, you may reduce the royalty, number one. He also said, number two, you could reduce the period of time during which the royalty would have run, number two. Number three, he said, if you don't accept his version that all of this copyrighted material was taken, you can reduce the royalty based upon that as well. There are other evidence that the jury had in front of them, such as the cost of creating a duplicate website. They also had in front of them the revenue growth of the hacker, of the competitor who got this information and got into the business the easy way. And so there's all of these factors that were in front of the jury, all of which the jury could take in, deconstruct, and arrive at a damage figure which they thought was fair given all of the evidence. Under sufficiency of the evidence standard, Your Honor, I submit there's just no other – there's no other way to approach a jury which does exactly what it's told to do, which is follow an unobjected obstruction – instruction and arrive at a damage figure, which is a – which is a compromise figure, less than what I asked for, but certainly more than what the defendant wanted to pay. In sum, Your Honor, we believe that there is absolutely no basis on this particular appeal to do anything other than affirm what the jury trialed, what the jury did. This was a lengthy trial with all sorts of concessions now being made in front of this court about the wrongdoing. At trial, that was not the case at all. All of these hacks, all of these accesses had to be proved up individually, access by access by access, because all of this was hidden, lied about, perjured about. There was suborn perjury. There were – there was all sorts of things that went on during this trial. Judge Windmill found that it was just bad faith litigation from – from start to finish and made a certain sanction findings in support of that in his – in his rulings. Under the circumstance, Your Honor, with the objection – with the instructions all being unobjected to, the jury being therefore properly instructed, and all of the evidence being admitted, essentially, or conceded for this appeal, it is difficult to imagine a weaker position for an appellant to be in where the law was correctly stated and the evidence on terms of the facts of liability were all basically admitted to. So in this case, Your Honor, we would ask the – that the findings of the district court be affirmed and that the judgment rendered in favor of our client also be affirmed. Thank you very much. Thank you, counsel. If it please the Court, with respect to the injunction, I would just like to just very briefly point out that, to me, the duration is not a problem. It's… Yeah. But, I mean, you know, we win the copyright case. I mean, they allege that the sites looked exactly the same. Even their experts said they don't look the same. Nothing was copied. They've never looked the same. We win copyright. We win trade dress. We end up with an injunction against us for copyright violations. Why can't – why can't the judge issue a broad prophylactic injunction? I think that the Court – Sort of like telling a child molester to stay out of the schoolyard. Well… Nothing wrong with being in a schoolyard, except that particular individual can't be trusted there. Well, why should we have an injunction against my client for copyright infringement when we won the case? And the other important points about the injunction itself is that the scope of the injunction – we offered the opportunity to really have a meaningful evidentiary hearing on it, to craft an injunction that could fit the nuances of the – you know, companies doing business on the Internet. We never got to that point. I really think that there are implications throughout this entire injunction that, you know, of course, was an adoption of the TRO that are major problems. And not being able to market to somebody – you know, to their customers – we don't know who their customers are. The basis and foundation for this whole customer list issue – we never got the customer list. So, you know, the hacking – you hear about hacking, hacking. But in this – in totality of the case, what this came down to, even by their own experts in the mission, 160 times we logged into their website. And there was one session of hacking into code that we didn't use in June and July of 99, two years before all these expenditures occurred. So it's not 3,800 hacks. It's 160 logins to a website by – you know, that's one every four days. So, you know, to end up with an injunction that's so broad is not in relation, I think, to the facts and circumstances of the case. And we wanted the opportunity to present evidence on it, and we never got the opportunity to do that. Now, I'd also point out that – one final point. As it relates to the damages, I think it's critically important to point out how the judge handled the damages issue in the trial. We filed a Rule 50 motion after their expert's testimony, of course, objected during their expert's testimony. You don't have an objection to evidence or a rejection of a proposed instruction that we should be looking at, right? We don't have the – exactly. And I'll tell you what the judge said, and it's clearly in the record. We started arguing the damages. He said, we're going to hold the damages issues, and we'll try to work it out in instructions, but then we'll take it up post-jury. Later he said, I'm going to let trade dress, copyright, CFAA, trade – we're going to go to the jury. I'm not going to retry this case. And we'll let the Ninth Circuit deal with the issues if we have to. We filed these issues in our judgment NOV. They objected, saying it was late, and the judge remembered what he told us, and he reached the merits. So the judge himself was saying, I'm not going to buy this not objecting. I was telling him throughout the trial, you can raise these issues post-verdict. I know what the issues are. I'm familiar with the dispute here. We'll try to work it out in jury instructions, but ultimately we'll pass it through post-verdict, and that way we'll have a record, a complete record for the Ninth Circuit. And that's the circumstances of how all that occurred. Thank you. Thank you. Creative Computing is submitted. We'll hear North Star Terminal. Excuse me, counsel. I think we'll take a brief recess before that. We'll take a 10-minute recess. Thank you. Thank you. Thank you.
judges: Dw Nelson, Kleinfeld, Fisher